UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

ARMANDO GARCIA,

                  Petitioner,

      v.

RANDY BLADES,

                  Respondent.

Case No. 1:15-cv-00122-REB

**MEMORANDUM DECISION AND ORDER**

Pending before the Court is Petitioner Armando Garcia's Petition for Writ of

Habeas Corpus, which challenges Petitioner's Ada County convictions, in two separate

cases, of two counts of trafficking in heroin. (Dkt. 3.) Petitioner has also filed a document

entitled "Amended Petition" (Dkt. 12), but this document does not appear to assert

separate constitutional claims. Rather, it contains arguments in support of the four claims

included in Petitioner's initial Petition.[1] Respondent has construed the "Amended

---

[1]      Indeed, the three "claims" listed in the "amended petition" attack the state courts' adjudication of Petitioner's state postconviction petition. (*See* Dkt. 12.) However, claims of error during state postconviction proceedings are not cognizable on federal habeas review, which allows for habeas relief only for violations of the federal constitution, a federal statute, or a federal treaty. *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989) (per curiam). Thus, the three "claims" described in Docket No. 12—if asserted as independent constitutional claims—would not be cognizable in this habeas action.

**MEMORANDUM DECISION AND ORDER - 1**

Petition" in such a manner, and Petitioner has not objected to that construction. (*See* Dkt. 16, 19.) Because the "Amended Petition" is better characterized as a supplement to the initial Petition, the Court will consider it as such and will treat both the initial petition (Dkt. 3) and the supplement (Dkt. 12) as the operative Petition in this case, considering all of the arguments in both documents offered in support of the claims listed in the Petition.

Petitioner's claims are now fully briefed.[2] The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by Respondent. (Dkt. 11, 15.) *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

All parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Dkt. 14.) Having carefully reviewed the record in this matter, including the state court record, the Court concludes that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d).

Accordingly, the Court enters the following Order denying habeas corpus relief.

## BACKGROUND

In Ada County Case No. CR-FE-2008-00062 ("the first case"), Petitioner was charged, by indictment, with conspiracy to traffic in heroin, in violation of Idaho Code § 37-2732B(a)(6)(C). (State's Lodging A-5 at 206; C-3 at 4-5.) That charge carries a

---

[2]     The Court will grant Petitioner's request for an extension of time to file his reply in support of his Petition. (Dkt. 17.)

**MEMORANDUM DECISION AND ORDER - 2**

mandatory minimum sentence of 15 years in prison and requires that the defendant have trafficked in at least 28 grams of heroin. Idaho Code § 37-2732B(a)(6)(D). (*See also* State's Lodging A-3 at 17-18; A-5 at 206, 219-20.)

Petitioner was later charged, by indictment, in Ada County Case No. CR-FE-2008-17452 ("the second case"), with trafficking in at least two grams, but less than seven grams, of heroin. (State's Lodging A-1 at 8-9.) Under Idaho Code § 37-2732B(a)(6)(A), the mandatory minimum sentence for a conviction on the charge in this second case was three years in prison. (*See also* State's Lodging A-5 at 219-20.)

The two cases against Petitioner were consolidated. (*Id*. at 22.) Pursuant to a plea agreement, Petitioner agreed to plead guilty—in the first case—to an amended information charging him with trafficking in a quantity of heroin (at least 7 grams, but less than 28 grams) that subjected him to a mandatory minimum of 10 years in prison, pursuant to Idaho Code § 37-2732B(a)(6)(B), rather than the 15-year minimum sentence Petitioner would receive if he were convicted of the charge in the original indictment. (State's Lodging A-5 at 206, 211-12, 219; C-3 at 4-5.) Petitioner also agreed to plead guilty—in the second case—to the trafficking charge that, pursuant to Idaho Code § 37-2732B(a)(6)(A), carried a mandatory minimum sentence of three years in prison. (*Id*. at 6-7; State's Lodging A-1 at 148-49.)

Petitioner's guilty pleas were entered following a plea colloquy during which Petitioner testified he understood that the court was not bound by any sentencing agreement and that the court could impose "any sentence up to the maximum"—which

**MEMORANDUM DECISION AND ORDER - 3**

was life imprisonment. (State's Lodging A-5 at 220.) Petitioner received a unified

sentence of 30 years in prison with 15 years fixed in the first case, and a concurrent

unified sentence of 30 years in prison with 3 years fixed in the second case. (State's

Lodging A-7 at 2, A-1 at 157.) Petitioner later filed a motion to withdraw his guilty plea,

which the judge denied after an evidentiary hearing. (State's Lodging A-6.)

Petitioner appealed in the second case, but not the first.[3] He argued that his

sentence was an abuse of discretion and that the trial court should have granted his

motion to dismiss for vindictive prosecution. (State's Lodging at B-1, B-3.) The Idaho

Court of Appeals affirmed, and the Idaho Supreme Court denied further review. (State's

Lodging B-4, B-6.)

Petitioner then filed a petition for postconviction relief in state court, asserting (1)

breach of the plea agreement, and (2) ineffective assistance of trial counsel based on (a)

counsel's alleged lies, which "got [Petitioner] to plead under false pretenses and

manipulation" (thereby rendering his plea involuntary), (b) counsel's failure to file a

notice of appeal in the first case, and (c) counsel's failure to argue "5th Amend. violation,

coercion to make statement, No notification of [*Miranda*], and waiver." (State's Lodging

C-1 at 7-8.)

---

[3]     Petitioner's plea agreement in the second case reserved his right to appeal the trial court's denial of his motion to dismiss based on vindictive prosecution. (State's Lodging C-3 at 3-4.) However, the plea agreement in the first case waived all of Petitioner's appellate rights, including the right to appeal the trial court's denial of Petitioner's motion to suppress evidence based on alleged violations of the Fourth Amendment and on alleged violation of Petitioner's Fifth Amendment rights. (*Id*. at 5-6; State's Lodging D-4 at 6.)

**MEMORANDUM DECISION AND ORDER - 4**

After counsel was appointed to represent Petitioner, Petitioner filed an affidavit—entitled "2nd Affidavit of Facts in Support of Post-Conviction Petition" ("Second Affidavit")—asserting numerous additional claims of ineffective assistance of trial counsel, including that counsel failed (1) "to adequately investigate possible suppression issues on the warrantless search & seizure," (2) to investigate "the fact that the confidential informant may have tampered with the evidence & the chain of custody may have been affected," (3) to investigate "whether there was adequate probable cause for the traffic stop," and (4) to investigate "whether or not surveillance footage of the parking lot where the stop occurred may have revealed suppression issues." (*Id*. at 61-62.) The state district court dismissed all of these claims on the merits. (*Id*. at 149-58.)

Petitioner appealed, including in his opening brief only his claim that his counsel was ineffective with respect to the plea agreement. (State's Lodging D-1.) However, in his reply brief on appeal from the dismissal of the postconviction petition, Petitioner referred to his Second Affidavit—which included the four additional claims just described—and attached both that affidavit and his original postconviction petition to the reply brief. (State's Lodging D-3.) The Idaho Court of Appeals denied, on the merits, the claims included in the initial petition—breach of the plea agreement and ineffective assistance based on counsel's (a) alleged lies, "false pretenses and manipulation" that supposedly led Petitioner to plead guilty, (b) failure to file a notice of appeal in the first case, and (c) failure "to argue 5th Amend. violation, coercion to make statement, No notification of [*Miranda*], and waiver." (State's Lodging D-4 at 3-6 (footnote omitted).)

**MEMORANDUM DECISION AND ORDER - 5**

The court of appeals also denied, on the merits, all of the ineffective assistance of counsel ("IAC") claims included in the Second Affidavit, stating that Petitioner had not submitted "admissible evidence supporting (or explaining) his claims, which are merely conclusory allegations."[4] (*Id.* at 6.) The Idaho Supreme Court denied review. (State's Lodging D-7.)

In his federal Petition for Writ of Habeas Corpus, Petitioner brings the following claims:

Claim 1:     Petitioner's guilty plea was involuntary, because allegedly "tricked" Petitioner into signing the plea agreement "via coersion [sic], out and out lies, and manipulation." This claim includes an assertion that his trial counsel was ineffective in his representation of Petitioner.

Claim 2:     Petitioner received ineffective assistance of counsel in violation of Sixth Amendment, based on counsel's failure to investigate alleged Fifth Amendment violations, with respect to "potentially coerced statements made by petitioner," including "*Miranda,* coercion, and waiver."

Claim 3:     Petitioner received ineffective assistance of counsel in violation of the Sixth Amendment, based on counsel's failure (i) to "thoroughly and adequately investigate proper suppression issues associated with a warrantless search," (ii) to investigate "chain of custody issues," or (iii) to investigate whether "there was adequate probable cause" to stop Petitioner's vehicle.[5]

---

[4]     The court noted that Petitioner's Second Affidavit was inadmissible because it was not "properly sworn before a notary public," which is required by Idaho Code § 51-109(2). (State's Lodging D-4 at 4 n.4.) Nonetheless, the court did address the claims raised in that affidavit.

[5]     Although Claim 3 nominally cites not only the Sixth Amendment, but also the Fifth Amendment and "the right to remain silent," the body of Claim 3 makes clear that Petitioner is asserting ineffective assistance of trial counsel—under the Sixth Amendment—based on counsel's failure to properly

**MEMORANDUM DECISION AND ORDER - 6**

Claim 4:  Petitioner received ineffective assistance of counsel in violation of the Sixth Amendment, based on counsel's failure to investigate surveillance footage.

(Dkt. 3 at 6-9; Dkt. 19 at 5.)

## DISCUSSION

The Idaho Court of Appeals denied all of Petitioner's claims on the merits. (State's Lodging D-1, D-3, D-4.) Thus, the Court will review the merits of these claims under 28 U.S.C. § 2254(d).

## 1. Standard of Law for Merits Review

Federal habeas corpus relief may be granted on claims adjudicated on the merits in a state court judgment when the federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

---

investigate and pursue certain Fourth Amendment issues. Respondent has noted this fact and construed Claim 3 as a Sixth Amendment claim, and Petitioner has not objected to that construction. Therefore, the Court similarly construes Claim 3 as an ineffective assistance claim, rather than a Fifth Amendment claim.

Further, even if a portion of Claim 3 were characterized as a Fifth Amendment claim, any such claim would be procedurally defaulted and subject to dismissal. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991) ("In all cases in which a state prisoner has defaulted his federal claims in state court . . . , federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."); *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because [the exhaustion] requirement refers only to remedies still available at the time of the federal petition, it is satisfied if it is clear that the habeas petitioner's claims are now procedurally barred under state law. However, the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.") (internal quotation marks and citations omitted) (alteration added, remaining alterations omitted).

Petitioner raised a Fifth Amendment claim to the trial court in his motion to suppress, which was denied. (State's Lodging A-1 at 137-44.) However, Petitioner did not appeal the denial of the motion because—as part of his plea agreement—he waived his right to appeal. (State's Lodging C-3 at 5-6.) And, as explained in Section 3, below, Petitioner's plea, including the appellate waiver, was knowing and voluntary, and therefore invulnerable to collateral attack in this case.

**MEMORANDUM DECISION AND ORDER - 7**

§ 2254(a). Under § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal habeas relief is further limited to instances where the state court's adjudication of the petitioner's claim

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Although a federal habeas court reviews the state court's "last reasoned decision" in determining whether a petitioner is entitled to relief. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991), a state court need not "give reasons before its decision can be deemed to have been 'adjudicated on the merits'" under § 2254(d). *Harrington v. Richter*, 562 U.S. 86, 100 (2011).

When a party contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] [has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Stated more simply, "Section 2254(d) applies regardless of the procedures

employed or the decision reached by the state court, as long as a substantive decision was reached." *Teti v. Bender*, 507 F.3d 50, 57 (1st Cir. 2007).

Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1) the petitioner must show that the state court—although identifying "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014).

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If there is any possibility that fair-minded jurists could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (internal citation omitted). To be entitled to habeas relief under § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law

**MEMORANDUM DECISION AND ORDER - 9**

beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks omitted).

Though the source of clearly established federal law must come only from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 2000). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

The United States Supreme Court has clarified "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). This means that evidence not presented to the state court may not be introduced on federal habeas review if a claim was adjudicated on the merits in state court and if the underlying factual determination of the state court was not unreasonable. *See Murray v. Schriro*, 745 F.3d 984, 999 (9th Cir. 2014).

When a petitioner contests the reasonableness of the state court's factual determinations, the petitioner must show that the state court decision was based upon factual determinations that were "unreasonable . . . in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a

**MEMORANDUM DECISION AND ORDER - 10**

different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010). If the factual findings of the state court are not unreasonable, those findings must be presumed correct pursuant to 28 U.S.C. § 2254(e)(1). *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

The United States Court of Appeals for the Ninth Circuit has identified five types of unreasonable factual determinations that result from procedural flaws that occurred in state court proceedings: (1) when state courts fail to make a finding of fact; (2) when courts mistakenly make factual findings under the wrong legal standard; (3) when "the fact-finding process itself is defective," such as when a state court "makes evidentiary findings without holding a hearing"; (4) when courts "plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim"; or (5) when "the state court has before it, yet apparently ignores, evidence that supports petitioner's claim." *Taylor v. Maddox*, 366 F.3d. 992, 1000-01 (9th Cir. 2004). As stated above, reasonable state court findings of fact are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

This strict deferential standard of § 2254(d) applies to habeas claims, except in the following narrow circumstances: (1) where the state appellate court did not decide a properly-asserted federal claim; (2) where the state court's factual findings are unreasonable under § 2254(d)(2); or (3) where an adequate excuse for the procedural default of a claim exists. *Pirtle*, 313 F.3d at 1167. In those narrow circumstances, the

**MEMORANDUM DECISION AND ORDER - 11**

federal district court reviews the claim de novo. In such a case, as in the pre-AEDPA era, a district court can draw from both United States Supreme Court and well as circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989).

Under de novo review, if the factual findings of the state court are not unreasonable, the Court must still apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167. Contrarily, if a state court factual determination is unreasonable, the federal court is not limited by § 2254(d)(2) or (e)(1). Rather, the federal district court may consider evidence outside the state court record, except to the extent that § 2254(e)(2) might apply. *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014).

Then, even if a petitioner succeeds in demonstrating a constitutional error in his conviction, he is entitled to federal habeas relief only if he "can establish that [the error] resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Under the *Brecht* standard, an error is not harmless and habeas relief must be granted *only* if the federal court has "grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *O'Neal v. McAninch*, 513 U. S. 432, 436 (1995) (internal quotation marks omitted). A "reasonable possibility" of prejudice is insufficient. *Brecht*, 507 U.S. at 637.

## 2.    Clearly-Established Law Regarding Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution provides that a criminal defendant has a right to the effective assistance of counsel in his defense. The standard

**MEMORANDUM DECISION AND ORDER - 12**

for ineffective assistance of counsel claims was identified in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting ineffective assistance of counsel must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) those errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the "reasonableness" of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

Strategic decisions, such as the choice of a defense, "are virtually unchallengeable" if "made after thorough investigation of law and facts relevant to

**MEMORANDUM DECISION AND ORDER - 13**

plausible options." *Strickland*, 466 U.S. at 690. Moreover, it is not ineffective assistance

of counsel when an attorney decides not to investigate a potential defense theory if the

decision to forego investigation is itself objectively reasonable:

> [S]trategic choices made after less than complete
> investigation are reasonable precisely to the extent that
> reasonable professional judgments support the limitations on
> investigation. In other words, counsel has a duty to make
> reasonable investigations or to make a reasonable decision
> that makes particular investigations unnecessary. In any
> ineffectiveness case, a particular decision not to investigate
> must be directly assessed for reasonableness in all the
> circumstances, applying a heavy measure of deference to
> counsel's judgments.

*Id.* at 690-91.

The Ninth Circuit has given definition to the *Strickland* standard when evaluating

such "strategy calls" and those decisions instruct this Court's assessment of whether the

state court reasonably applied *Strickland*. *Duhaime*, 200 F.3d at 600. First, tactical

decisions do not constitute ineffective assistance simply because, in retrospect, better

tactics are known to have been available. *Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir.

1984). Second, a mere difference of opinion as to tactics does not render counsel's

assistance ineffective. *United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981).

If a petitioner shows that counsel's performance was deficient, the next step is the

prejudice analysis. "An error by counsel, even if professionally unreasonable, does not

warrant setting aside the judgment of a criminal proceeding if the error had no effect on

the judgment." *Strickland*, 466 U.S. at 691. To satisfy the prejudice standard, a petitioner

"must show that there is a reasonable probability that, but for counsel's unprofessional

**MEMORANDUM DECISION AND ORDER - 14**

errors, the result of the proceeding would have been different." *Id.* at 694. As the

*Strickland* Court instructed:

> In making this determination, a court hearing an
> ineffectiveness claim must consider the totality of the
> evidence before the judge or jury. Some of the factual
> findings will have been unaffected by the errors, and factual
> findings that were affected will have been affected in
> different ways. Some errors will have had a pervasive effect
> on the inferences to be drawn from the evidence, altering the
> entire evidentiary picture, and some will have had an isolated,
> trivial effect. Moreover, a verdict or conclusion only weakly
> supported by the record is more likely to have been affected
> by errors than one with overwhelming record support. Taking
> the unaffected findings as a given, and taking due account of
> the effect of the errors on the remaining findings, a court
> making the prejudice inquiry must ask if the defendant has
> met the burden of showing that the decision reached would
> reasonably likely have been different absent the errors.

*Id.* at 695-96. To constitute *Strickland* prejudice, "[t]he likelihood of a different result

must be substantial, not just conceivable." *Richter*, 562 U.S. 86 at 112.

To show prejudice based on deficient performance of counsel in a case where a

guilty plea was entered, as petitioner did here, the petitioner must show "a reasonable

probability that, but for counsel's errors, he would not have pleaded guilty and would

have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Finally, when evaluating a claim of ineffective assistance of counsel in a federal

habeas proceeding under § 2254(d), the Court's review of that claim is "doubly

deferential." *Pinholster*, 563 U.S. at 190.

**MEMORANDUM DECISION AND ORDER - 15**

3.     **Merits Analysis of Claim 1: Involuntary Guilty Plea and Ineffective Assistance of Counsel, Based on Counsel's Conduct Surrounding the Plea Agreement and Guilty Pleas**

Claim 1 asserts that Petitioner's guilty plea was invalid because Petitioner's counsel allegedly "tricked" him into signing the plea agreement "via coercion [sic], out and out lies, and manipulation." (Dkt. 3 at 6.) This claim includes an allegation that Petitioner's attorney rendered ineffective assistance by engaging in such conduct.

To satisfy the Constitution, a guilty plea must be knowing, intelligent, and voluntary. A plea can be unknowing or involuntary "either because the accused does not understand the nature of the constitutional protections that he is waiving, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." *Henderson v. Morgan*, 426 U.S. 637, 645 n. 13 (1976) (internal quotation omitted). A habeas petitioner may attack the knowing and voluntary nature of a guilty plea rendered upon the advice of counsel only if the petitioner shows "that the advice he received from counsel" was not "within the range of competence demanded of attorneys in criminal cases." *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973) (internal quotation marks omitted). That is, the petitioner's attorney must have rendered ineffective assistance, which—to a reasonably probable degree—must have caused the Petitioner to enter the guilty plea. *See Hill*, 474 U.S. at 59.

A.     *State Court Decision*

Petitioner argued in state court that he believed his plea agreement required the trial judge to impose a fixed sentence of 10 years. The Idaho Court of Appeals denied Claim 1 because (1) Petitioner's "plea agreement was made knowingly, voluntarily, and

**MEMORANDUM DECISION AND ORDER - 16**

intelligently,"[6] and (2) in support of his claim, Petitioner offered mere conclusory allegations that were unsupported by admissible evidence. (State's Lodging D-4 at 4.)

### B.      Petitioner Is Not Entitled to Relief on Claim 1

The court of appeals reasonably rejected Petitioner's claim that his attorney lied to him and coerced or manipulated him into pleading guilty by promising that Petitioner would receive a minimum fixed sentence of 10 years.

After holding an evidentiary hearing at which both Petitioner and his trial attorney testified, the state district court found that Petitioner's attorney had fully explained the plea agreements and potential sentences to Petitioner. The court found counsel "was very careful to explain to [Petitioner] that, in fact, [10 years] was not a sentence that was a maximum that he would receive on the fixed portion, and was very careful to explain to him that the State was free to argue anything that it wished to up to the maximum, and the Court was free to impose any sentence that it wished up to the maximum." (State's Lodging A-6 at 63.)

This factual finding is supported by trial counsel's testimony that he had explained to Petitioner—frequently, "unequivocally," and "in great detail"—that the plea agreement did not guarantee a fixed sentence of only 10 years, that the prosecution and the defense were free to recommend any particular sentence within the statutory guidelines, and that the sentencing judge was not bound to impose any specific sentence other than the

---

[6]      The state court of appeals cited the knowing and voluntary nature of Petitioner's plea in support of its decision that counsel was not ineffective for failing to file a notice of appeal in the first case. The conclusion regarding the knowing and voluntary nature of the plea applies equally to Claim 1—that Petitioner's guilty plea was invalid because of his attorney's conduct.

**MEMORANDUM DECISION AND ORDER - 17**

statutory minimum. (*Id*. at 41-42, 56.) Thus, Petitioner cannot show that counsel's performance fell below an objective standard of reasonableness.

Relying on the testimony of his trial counsel at the evidentiary hearing, Petitioner asserts that his attorney "baited" him into pleading guilty. The specific language cited by Petitioner is the following statement made by his trial attorney: "I don't want to use— bait; that, you know, let's get you into an agreement." (Dkt. 19 at 6.) However, in context, it is clear that counsel's testimony was about his belief as to what the *prosecutor* would recommend at sentencing even if it they negotiated a plea agreement:

> It literally felt like I was in a marketplace with [the prosecutor], having to entertain [plea] offers, and I was really doing my level best to get [away from 15 years as the minimum sentence]. And I will say that [the prosecutor] was very much insistent that that wouldn't happen. [The plea agreement that Petitioner accepted] really was at the eleventh hour.

> And there was, like I said, I believe some other issues that may have related to her being willing to consider that amendment [to the information to allege a violation of the statute providing for a minimum sentence of 10 years]. But that—we struck that offer. And I went in and I did my level best to explain it to [Petitioner].

> And I am remembering how important it was to make it known to [Petitioner] that, listen, *just because the parties agree that there's going to be an amendment to a lesser offense, that that's not a lock that you're going to get 10 years. That was so important, because that was—it was an opportunity to make that sentence a reality that, to me, had real value*. And when I got that offer from [the prosecutor], frankly, I was very excited.

> But I'm an experienced attorney and I know that that's not a guarantee. That's only a couple steps in the right direction.

**MEMORANDUM DECISION AND ORDER - 18**

And I do remember making that—as best as I was able to—understandable for [Petitioner].

. . .

. . . And I remember, like, he thanked [the prosecutor] at different times throughout this process. and, subjectively, it's possible that he thought that it was a 10-year fixed sentence.

But I know that I made a mental note of his subjective belief and tried to bring him back to a position of objectivity in terms of explaining to him that this isn't—this is, by no means, a guarantee. And I did that for two reasons.

Number one, I know my opponent, [the prosecutor]. [She] is a skilled prosecuting attorney. *And I knew that [the prosecutor] was not going to come in and ask for 10 years. I knew that. And I made that clear to [Petitioner] that, just because she's willing to amend the charge—in a way, it's almost as if it were—I don't want to use—bait; that, you know, let's get you into an agreement.*

But I knew that [the prosecutor] was not going to ask for the 10-year sentence, because she hadn't in the body of the case previously.

(State's Lodging A-6 at 46-48 (emphasis added).)

Taken in context of counsel's entire testimony, it is clear that counsel was not testifying that counsel *himself* baited Petitioner into accepting the plea agreement—rather, counsel was stating his professional belief that *the prosecutor* may have "baited" Petitioner—that is, offered the amendment to a lesser charge to influence Petitioner to accept the plea agreement, never actually intending to argue that Petitioner should be sentenced only to the mandatory minimum sentence. And that was a perfectly legitimate decision made by the prosecutor. The plea agreement unambiguously preserved the

**MEMORANDUM DECISION AND ORDER - 19**

prosecution's right to argue for *any* sentence—not just the mandatory minimum of 10 years. (State's Lodging C-3 at 3-6.)

In addition, because Petitioner argues that his guilty plea was involuntary based on his attorney's conduct and advice, he cannot show prejudice unless he establishes that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. But, as the transcript of the change-of-plea hearing reveals, Petitioner was under no illusion that his plea agreement provided for a specific fixed sentence of 10 years:

> THE COURT:   In [the first case], there has been an amended information that has been filed in that case that amends the charge to a violation of Idaho Code 37-2732(b)(a)(6)(b). It is a charge of trafficking in heroin. However, the potential penalty is that case is less than the penalty for the earlier indictment, which charged [Petitioner] with a violation of 37-2732(b)(a)(6)(c). So in this situation, that is the change that has been made there. . . .
>
> In this case, my understanding then is that [Petitioner] would plead guilty to that amended information and would also plead guilty to the indictment in [the second case].
>
> *In exchange for those guilty pleas in those two cases, the State is free to argue any sentence up to the maximum which, again, is up to life in prison for either charge.*
>
> *The defense is free to argue that the Court simply impose the mandatory minimum in each case*, which in the [first] case is 10 years in the State penitentiary and in the [second] case, it is three years in the State penitentiary. . . .

**MEMORANDUM DECISION AND ORDER - 20**

|                  | *And in this case, Mr. Garcia, was that your understanding of the agreement?* |
|------------------|------------------|
| [Petitioner]:    | *It is, Your Honor.* |

. . .

| [THE COURT]:     | Sir, turning first to the [first] case, the trafficking there that has now been charged under 37-3732(b)(a)(6)(b) for knowingly possessing and/or bringing into the state seven grams or more of heroin. *What did you understand, again, the maximum possible penalty for that to be?* |
|------------------|------------------|
| [Petitioner]:    | The maximum? |
| [THE COURT]:     | Yes, sir. |
| [Petitioner]:    | *Life.* |
| [THE COURT]:     | Up to life and up to a $100,000 find. Do you understand that, sir? |
| [Petitioner]:    | Yes, sir, I do now. |
| [THE COURT]:     | You also understand that the minimum for that is ten years in the State penitentiary and . . . a $15,000 fine. Do you understand that, as well, sir? |
| [Petitioner]:    | I understand. |
| [THE COURT]:     | Okay. Now, sir, in the [second] case for the trafficking charge there as contained in the indictment pursuant to Idaho Code 37-2732(b)(a)(6)(a), *what did you understand the maximum possible penalty for that offence to be?* |
| [Petitioner]:    | *Life.* |
| [THE COURT]:     | Again, sir, that is correct, up to life in prison and up to a $100,000 fine or both. And there is a mandatory |

**MEMORANDUM DECISION AND ORDER - 21**

|  | minimum period of incarceration of three years and a $10,000 fine. Do you understand that, as well? |
|---|---|
| [Petitioner]: | Yes, sir, I do. |
| [THE COURT]: | Okay. Now, sir, in this case *you understand that I am not bound by the agreement in terms of sentencing. In other words, there has been no sentencing agreement in this case and, therefore, I could impose any sentence up to the maximum. Do you understand that, sir?* |
| [Petitioner]: | *Yes, sir, I do.* |
| . . . | |
| [THE COURT]: | You also understand, sir, in this case you have given up your right to appeal any decision I have made in this case other than the denial of your motion to dismiss for vindictive prosecution. Do you understand that? |
| [Petitioner]: | I do understand, Your Honor. |
| . . . | |
| [THE COURT]: | In this case, if I do run these sentences concurrently but *if I impose a sentence up to and including life, in this case, you would not be able to appeal that decision . . . . Do you understand that, as well?* |
| [Petitioner]: | *I do.* |

(State's Lodging A-5 at 206-08, 219-22 (emphasis added).)

Petitioner cannot show that he would not have pleaded guilty if counsel had advised him any differently than he did, because Petitioner went into the sentencing proceedings with his eyes wide open. Petitioner gained an advantage by the amended information, which permitted—but did not require—the court to impose a sentence of 10

**MEMORANDUM DECISION AND ORDER - 22**

years in prison instead of the 15 years that would have been required under the original indictment in the first case. But, as is clear from everything in the record, he was not guaranteed such a result.

It is easy to look back, in hindsight, and conclude that Petitioner might not have pleaded guilty if he had known for certain that he would receive a fixed sentence of 15 years in prison, rather than the 10-year fixed sentence that the amended information permitted and for which Petitioner was hoping. But what matters is that Petitioner did know, because of his attorney's advice and the judge's statements to him, that Petitioner *could* receive such a sentence, and he chose to plead guilty anyway in the reasonable hope that the judge would choose a lesser sentence. This was a rational decision, and Petitioner made it knowing all the relevant information. That Petitioner ultimately received a sentence with which he is dissatisfied does not render his plea unknowing or involuntary.

For the foregoing reasons, the Idaho Court of Appeals rejection of Claim 1 was reasonable.

**4.    Merits Analysis of Claim 2: IAC Based on Counsel's Alleged Failure to Raise a Fifth Amendment Argument**

In Claim 2, Petitioner claims that his attorney was ineffective, in violation of the Sixth Amendment, for failing to assert a violation of Petitioner's Fifth Amendment right to be free from self-incrimination. (Dkt. 3 at 7.) As stated by the Idaho Court of Appeals, Claim 2, "in effect, argues that counsel failed to file a motion to suppress statements that were made involuntarily or in violation of *Miranda*." (State's Lodging D-4 at 4 n.3.) *See*

**MEMORANDUM DECISION AND ORDER - 23**

*Miranda v. Arizona,* 384 U.S. 436, 445 (1966) (holding that suspects in custody must be informed, prior to interrogation, that they have a Fifth Amendment right to remain silent and to have an attorney present during police questioning").

### A.    State Court Decision

The Idaho Court of Appeals rejected Claim 2 because "defense counsel *did* file a motion to suppress" based on a purported *Miranda* violation and alleged coercion, and the trial court held a hearing on the motion. (State's Lodging D-4 at 6.) In reviewing the trial court record, the court of appeals noted that Petitioner had testified he was "threatened by a detective in a police interview," that the detective had testified he had informed Petitioner of his *Miranda* rights and had not threatened Petitioner, and that "a signed *Miranda* waiver was introduced" at the hearing. (*Id.*) The court dismissed Petitioner's conclusory references to "waiver" and to defense counsel's alleged cooperation and participation in the supposed *Miranda* violation because those assertions were not supported by admissible evidence. (*Id.*)

### B.    Petitioner Is Not Entitled to Relief on Claim 2

The Idaho Court of Appeals reasonably rejected Claim 2—that trial counsel was ineffective for failing to assert a Fifth Amendment violation—because Petitioner's counsel did, in fact, raise a Fifth Amendment argument in Petitioner's motion to suppress. (State's Lodging A-1 at 62-69.) Counsel put Petitioner on the stand and also cross-examined the detective at the hearing on the motion to suppress. (State's Lodging A-4.) Counsel argued that Petitioner had not knowingly waived his *Miranda* rights because he was under the influence at the time and that Petitioner's statements were

**MEMORANDUM DECISION AND ORDER - 24**

coerced by the detective. (State's Lodging A-1 at 139.) The trial court reasonably

resolved the conflicting testimony of Petitioner and the detective, finding the detective to

be more credible. (*Id*. at 140-41.)

Credibility findings are the quintessential type of finding generally left to the trier

of fact, who hears the witness's testimony and observes his or her demeanor:

> All aspects of the witness's demeanor including the
> expression of his countenance, how he sits or stands, whether
> he is inordinately nervous, his coloration during critical
> examination, the modulation or pace of his speech and other
> non-verbal communication may convince the observing trial
> judge that the witness is testifying truthfully or falsely. These
> same very important factors, however, are entirely
> unavailable to a reader of the transcript . . . .

*Penasquitos Village, Inc. v. N.L.R.B.*, 565 F.2d 1074, 1078-79 (9th Cir. 1977). Therefore,

the Idaho Court of Appeals reasonably relied upon the trial court's factual finding that

trial counsel's testimony was true.

Petitioner's claim that his trial counsel did not adequately raise a Fifth

Amendment argument is belied by the record. The state court decisions were based on

reasonable findings of fact, and the Idaho Court of Appeals' rejection of Claim 2 was not

contrary to, or an unreasonable application of, clearly-established Supreme Court

precedent. *See* 28 U.S.C. § 2254(d).

## 5.   Merits Analysis of Claim 3: IAC Based on Counsel's Failure to Investigate and Assert Fourth Amendment Arguments

In Claim 3, Petitioner claims that counsel failed (a) to "thoroughly and adequately

investigate proper suppression issues associated with a warrantless search," (b) to

investigate "chain of custody issues," and (c) to investigate whether "there was adequate

**MEMORANDUM DECISION AND ORDER - 25**

probable cause" to stop or to arrest Petitioner. (Dkt. 3 at 8.) These are all assertions that trial counsel should have raised various Fourth Amendment issues.

### A.     *State Court Decision*

Petitioner raised this claim in his Second Affidavit in his state postconviction proceedings, and attached that affidavit to his reply brief on appeal from the trial court's dismissal of his postconviction petition. (State's Lodging C-1 at 61-62; D-3.) Despite the Idaho Court of Appeals' statement that it would not consider arguments raised for the first time in a reply brief, that court did, in fact, consider the claims raised in the Second Affidavit—including each sub-claim in Claim 3. (State's Lodging D-4 at 5 n.5, 6.) The court held that Petitioner "did not submit admissible evidence supporting (or explaining) his claims" that trial counsel rendered ineffective assistance by failing to pursue certain suppression, chain of custody, or probable cause issues. (*Id.* at 6.) For purposes of habeas review under § 2254(d), a state court's decision that a petitioner did not meet his burden of establishing a constitutional violation equates to a merits decision that no such violation occurred.

### B.     *Petitioner Is Not Entitled to Relief on Claim 3*

Petitioner has not established that the Idaho Court of Appeals' rejection of Claim 3 was contrary to, or an unreasonable application of, Supreme Court law, nor has he shown that the decision was based on an unreasonable factual finding. *See* 28 U.S.C. § 2254(d). Trial counsel did, in fact, raise Fourth Amendment arguments when he filed a motion to suppress evidence, arguing that evidence seized from a vehicle in which Petitioner was a passenger, as well as evidence found in Petitioner's home, was obtained in violation of

**MEMORANDUM DECISION AND ORDER - 26**

the Fourth Amendment. (State's Lodging A-1 at 62-69). The trial court denied the

motion. Petitioner does not identify the other suppression, chain of custody, or probable

cause issues that he alleges should have been asserted. He has also not shown a

reasonable probability that any other Fourth Amendment arguments would have been

accepted by the trial court, thereby causing Petitioner to insist on going to trial instead of

pleading guilty. *See Hill*, 474 U.S. at 59. Therefore, Petitioner is not entitled to relief on

Claim 3.

**6.    Merits Analysis of Claim 4: IAC Based on Counsel's Failure to Investigate Surveillance Videos**

Claim 4 asserts that Petitioner received ineffective assistance of counsel because

his attorney failed to investigate surveillance videos. (Dkt. 3 at 9.)

### A.    *State Court Decision*

The state court of appeals rejected Claim 4 for the same reason as Claim 3—

Petitioner did not submit any admissible evidence supporting his claim, which was

nothing more than a conclusory allegation. (State's Lodging D-4 at 6.)

### B.    *Petitioner Is Not Entitled to Relief on Claim 4*

Petitioner is not entitled to a grant of habeas relief on Claim 4 for the same reason

as Claim 3. Petitioner has not established that the Idaho Court of Appeals' rejection of

Claim 4 was contrary to, or an unreasonable application of, Supreme Court law, nor has

he shown that the decision was based on an unreasonable factual finding. *See* 28 U.S.C. §

2254(d). Petitioner has not provided evidence supporting a conclusion that (1) counsel

performed deficiently, or (2) it is reasonably probable that—had counsel investigated

**MEMORANDUM DECISION AND ORDER - 27**

surveillance videos—Petitioner would have not have pleaded guilty and would have insisted on going to trial. *See Hill*, 474 U.S. at 59; *Strickland*, 466 U.S. at 687-89.

## CONCLUSION

None of Petitioner's arguments as to the merits of the Petition's ineffective assistance counsel claims is persuasive. For the reasons set forth above, the Court concludes that the Idaho Court of Appeals reasonably rejected the claims in the Petition. *See* 28 U.S.C. § 2254(d).

## ORDER

**IT IS ORDERED:**

1.  Petitioner's Request for More Time to File a Response to the Respondent's Answer and Brief in Support of Dismissal of Petitioner's Petition for Writ of Habeas Corpus (Dkt. 17) is GRANTED. Petitioner's reply (Dkt. 19) is deemed timely.

2.  The Petition for Writ of Habeas Corpus, including Petitioner's supplement to that Petition (Dkt. 3 & 12), is DENIED. This entire action is DISMISSED with prejudice.

3.  The Court finds that its resolution of this habeas matter is not reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner wishes to appeal, he must file a timely notice of appeal with the

Clerk of Court. Petitioner may seek a certificate of appealability from the

Ninth Circuit by filing a request in that court.



DATED:  **August 22, 2016**

_____
Honorable Ronald E. Bush
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 29**